## WOOLDRIDGE v. MacINTOSH & SHERIDAN, Inc.

### No. 11159.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 18, 1952.

Decided Feb. 14, 1952.

———◆———

James R. Sharp, Washington, D. C., for appellant.

Robert E. Lynch, Washington, D. C., with whom Mr. James F. Reilly, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, WILBUR K. MILLER, and FAHY, Circuit Judges.

EDGERTON, Circuit Judge.

On October 28, 1946 appellant Wooldridge and appellee corporation made a written contract beginning with this paragraph:

"Whereas, MacIntosh & Sheridan, Inc., is desirous of securing the services and co-operation of Arthur O. Wooldridge and in connection with the securing of such services the Corporation is willing to sell Wooldridge a one-fifth interest in the capital stock of the Corporation:"

This contract contained the following provisions. The corporation purported to sell appellant 100 shares, amounting to one-fifth, of its capital stock "as of" August 1, 1946, at $250 a share. Appellant was to endorse his stock certificate in blank and leave it with the corporation in trust until he paid for it in full. He was to pay $1,-000 at once and to give appellee non-interest bearing notes for the balance "to be paid as follows: One note for $1,000 due on or

before December 31, 1946, and a note for $4,000 each calendar year thereafter, the last note of the series to be $3,000, making a total of $25,000, all notes to give to Wooldridge the right to pay any or all of the balance at any time." Appellant was "to have the right to vote the stock at all times during the time this agreement is in force, this agreement to remain in force until the entire purchase price is paid, at which time all of the capital stock hereby purchased is to be turned over to Wooldridge free and clear of encumbrances, the Corporation having no right whatsoever in the stock other than to hold it under this agreement as collateral. It is further understood and agreed that in the event Wooldridge leaves the employment of the Corporation for any cause or in case of his death, his stock is redeemable by the Corporation at his cost, plus one-fifth of the earnings to the last previous quarterly closing, plus his interest in accumulated surplus to such closing, his interest in the earnings to be computed after provision for all taxes both District and Federal. It is understood and agreed also that the purchase price of this stock is the full value of the stock at the date of purchase and there is nothing in connection with this sale in any way amounting to any remuneration to Wooldridge, the purpose of the agreement being to give Wooldridge an interest in the business in order to further encourage his efforts on behalf of the business."

Accordingly appellant gave the corporation a note dated October 31, 1946 for $24,000, with a "Schedule of Payments" in accordance with the contract. He received a certificate for 100 shares of stock and endorsed and deposited it as collateral. The note stated that "In the event of default in payments on this note, the Corporation is given the right to sell such stock and credit such proceeds against any unpaid balance owing to the Corporation."

Appellant worked for appellee, and received a salary, until June 30, 1949. He then left. He made no payments on the notes. His undisputed testimony is that appellee demanded no payments. Appellee paid no dividends.

On August 10, 1949 the corporation wrote appellant a letter saying: " * * * this company will, pursuant to [the contract], redeem your 100 shares of capital stock of this company, represented by certificate No. 3, and pay to you therefor the sum of $1,000.00, together with the cancellation of and surrender to you of the notes made by you dated October 31, 1945, to our order in the amount of $24,000.00 without interest. The acceptance of the foregoing by you will in no manner prejudice either your rights or ours in the controversy regarding the one-fifth of the earnings of the corporation as set out in the agreement dated October 28, 1946 * * *." Appellant endorsed his acceptance on this letter.

Appellant afterwards brought this suit for one-fifth of the corporation's earnings between August 1, 1946 and June 30, 1949. The District Court dismissed the complaint, after a hearing, on the ground that appellant had failed to make the payments the contract and note called for.

■■■ The question whether one who fails promptly to perform promises under a contract loses his right to enforce performance turns upon the intention of the parties. The contract between appellant and appellee was primarily a contract of employment. Appellee's express purpose in making it was to get appellant's "services and cooperation" and to "give" him "an interest in the business in order to further encourage his efforts on behalf of the business." The stock certificate and the note were means to that end. If appellant defaulted on the note, appellee could not only discharge him and sue him but could also sell his stock. These rights gave appellee a large measure of protection against loss. Appellee was not obliged to exercise them. It had the privilege, which it chose to exercise, of continuing to employ appellant, and continuing to carry the stock in his name, as if no default had occurred. But we think the parties did not intend that after choosing to exercise this privilege in the interest of the business appellee should have the further privilege of withholding from appellant what was in substance a part of the compensation it had promised

him for his work. We think the contract was not meant to enable appellee to derive such a profit from appellant's default. We need not consider whether, if the contract had been intended to give appellee that privilege, appellee would be estopped from asserting it.

Reversed.